**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TERRANCE MURPHY, #358-650      *

    Plaintiff              *

         v              *      Civil Action No. DKC-15-2448

WARDEN                *

    Defendant          *
                           ***

**MEMORANDUM OPINION**

The above-captioned case was opened after the court received correspondence from Terrance Murphy, an inmate at North Branch Correctional Institution ("NBCI"), alleging that his life was in danger. ECF No. 1. The court directed Murphy to supplement the complaint with the names of individuals who allegedly were threatening him, the dates and facts of incidents when his safety was imperiled; and his efforts to inform prison officials. Murphy subsequently filed a supplement on court provided forms for filing a civil rights complaint. ECF No. 2. As relief, Murphy seeks damages and transfer to another correctional institution.

The court deemed Murphy's allegations of imminent danger sufficiently serious to require an expedited response. On November 4, 2015, counsel with the Office of the Attorney General of Maryland filed a response opposing preliminary injunctive relief supported by verified exhibits, including declarations and medical and institutional records. ECF No. 7-1, 7-2.

The court notified Murphy of its intention to construe the response as a motion for summary judgment and granted him time to respond. ECF No. 8. Murphy filed a response on November 30, 2015. ECF No. 9.

The case is ready for disposition. After considering the papers, exhibits, and applicable law, the court concludes a hearing unnecessary to resolve the issues. *See* Local Rule 105.6 (D.

Md. 2016).  For reasons stated below, preliminary injunctive relief will be denied and summary judgment will be granted in favor of Defendant.

## BACKGROUND

### A.      Murphy's Claims

Murphy states that he has served six years of a ten year sentence and is housed at NBCI with dangerous inmates who are serving life sentences.  Murphy alleges that inmates serving life sentences have no concern about losing good time credits and therefore might kill him at any time.  ECF No. 1.  Murphy claims that he should be placed in a single cell because he is soon to be released,[1] and has bi-polar disorder and post-traumatic stress disorder ("PTSD").  ECF Nos. 1, 3.

Murphy states that he advised the prison psychology department about his housing concerns for fear he will be placed on disciplinary segregation for either hurting someone or someone hurting him.  His request for assistance was denied.  ECF Nos. 1, 3.  Murphy also wrote to the Inmate Grievance Office and the Warden, but received no response.  He states that his administrative remedy procedure requests ("ARP") were dismissed.  ECF No. 3.

Although directed to provide the names of individuals who allegedly have threatened him and the dates of these incidents, Murphy has not done so.  Further, Murphy does not explain how his mental health conditions warrant his placement in single inmate housing.

### B.      Response

Murphy's claims of danger and need for single cell housing were investigated by Randy Durst, a correctional case manager at NBCI.  ECF No. 7-1, decl. of Randy Durst.  Durst attests that on October 16, 2015, he contacted Anita Rozas, the social work site supervisor, to see if she had any insight into Murphy's alleged need for single cell placement due to bi-polar disorder and

---

[1]     Murphy's mandatory release date is March 31, 2017.  ECF No. 7-2.

PTSD.  Durst received a response from Melissa Harr, a social worker, who indicated that she had corresponded with Murphy concerning release planning.  Harris stated that Murphy never mentioned his need for a single cell due to bi-polar disorder, PTSD, or in light of his release date. *Id.* ¶ 5.

Durst also attests that Murphy's ARP request index contains one ARP alleging that his life was in danger.  In NBCI-ARP-1704-15, filed on August 21, 2015, Murphy alleged that his life was in danger because his cellmate was bleeding profusely and he was acting as his caregiver. *Id.* ¶ 6; ECF No. 7-1.  Murphy withdrew that ARP on August 20, 2015. *Id.* Murphy did not claim in that ARP request that he needed single cell placement. *Id.* ¶7.

As part of his investigation, Durst requested and reviewed Murphy's records from the psychology department.  The records indicate that Murphy's conditions are managed with medication.  ECF No. 7-1.  The October 6, 2015 record noted that Murphy denied having depressive feelings and exhibited no signs of mania or psychosis.  The October 8, 2015 note reads that Murphy "is doing well and goal directed." *Id.* ¶ 8.  Durst states that there was no indication that Murphy had expressed a need for a single cell or that psychology staff deemed a single cell necessary.  In light of the above, Durst determined that there was no evidence to support Murphy's claim of need for single cell housing.

### C.      Murphy's Response

Murphy states in his response that he has been robbed, bullied, and beaten up at NBCI. ECF No. 9.  He claims that his intention in filing this complaint was indirectly to imply that he would harm someone or sustain harm himself, so that he could be placed in disciplinary segregation for his safety and so that he would not receive any infractions.  ECF No. 9 at 1-2 ¶2. Further, Murphy states that he does not want to identify specific inmates or incidents of harm

because he does not trust NBCI corrections officers.  Murphy adds that corrections officers are afraid of the inmates.  *Id.*  Murphy avers that some correctional officers are associated with prison gangs.  *Id*. at 2.  According to Murphy, "[b]eing a snitch is punishable by death."  *Id*.

Murphy filed copies of three ARP requests.  In NBCI-1206-15, filed June 19, 2015, Murphy protested his transfer from Western Correctional Institution ("WCI") to NBCI and suggested that the transfer was due to his filing of ARPs at WCI.[2]  At the end of the ARP, Murphy wrote that "85% of this prison have life. [sic] I have six years in on 10 years I might not make it home dealing with these guys."  ECF No. 9-1.  Notably, Murphy did not identify an inmate, incident, or threat to him.  He did not state that he believed he was in danger of harm.  *Id.* The ARP was dismissed on June 22, 2015, for procedural reasons:  Inmates may not seek relief through the ARP process concerning case management recommendations and decisions pursuant to Department of Correction Directive (DCD) 185-002 VI.B.  In ARP NBCI-1384-15, Murphy disputed his transfer to NBCI, a maximum security level facility, and it too was dismissed pursuant to DCD185-002 VI.B.  ECF No. 9-1.

Murphy's third ARP request is dated July 18, 2015.  It appears to be signed by a correctional officer, but bears no stamp of receipt by the Warden or ARP coordinator and was not assigned a case number.  ECF No. 9-1.  Murphy claims that the ARP was signed by Sgt. Forney but never processed.  Instead, it was slid back under Murphy's cell door "in an attempt to protect the staff." ECF 9, *see also* ECF 9-1.  Murphy checked a box on the ARP indicating that the complaint concerned a matter of threat to his health and safety.  Specifically, Murphy complained that he is not receiving psychological treatment to assist him in staying out of trouble and needs a "loaner" fan and television.  Murphy asks whether Ms. Wilson, a mental health provider, wanted him to receive an infraction to "run my time up maybe even hurt someone or

---

[2]    Murphy does not present a retaliation claim here.

4

someone hurt me, before I receive treatment.  *Id.*  Murphy adds that all he wants is to stay out of

trouble.  *Id.*  Murphy did not request single cell housing.

## DISCUSSION

### A.      Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy.  *See Munaf v. Geren,*

553 U.S. 674, 689–90 (2008).  A plaintiff must show that the irreparable harm he faces in the

absence of relief is "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd.*

*v. Breakthrough Medical Group*., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).  In the

prison context, courts grant preliminary injunctive relief involving the management of

correctional institutions only under exceptional and compelling circumstances.  *See Taylor v.*

*Freeman*, 34 F.3d 266, 269 (4th Cir.1994).

To obtain a preliminary injunction, a movant must demonstrate:  1) that he is likely to

succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary

relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public

interest.  *See Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008).  All four

elements must be satisfied.  *The Real Truth About Obama, Inc. v. Federal Election Commission*,

575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089, (2010), reinstated in

relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).  Murphy fails to establish

that he is likely to suffer irreparable harm absent preliminary injunctive relief.  First, he does not

demonstrate that he is facing imminent or irreparable harm.  His claims of harm and need for

single cell placement were investigated and found unsubstantiated.  Murphy provides no facts

supporting his claims that he was beaten and robbed.  The undisputed records provided by

Defendant contain no indication that Murphy sustained emotional or physical injury due to self-

harm or harm inflicted by his fellow inmates.  Moreover, neither Murphy nor the records before this court suggest there is a medical necessity for single cell placement.  Next, Murphy's allegations do not show that an injunction is in the public interest.  Daily maintenance of security and order in a correctional institution are "considerations ... peculiarly within the province and professional expertise of corrections officials."  *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 540 n. 23, 548 n. 29 (1979).  Inmates do not have a constitutionally recognized liberty interest in a particular security classification or a constitutional right to be confined in a particular prison. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Thus, Murphy is unable to show that the balance of equities favors or the public interest is served by granting preliminary injunctive relief.  In sum, there are no grounds to award preliminary injunctive relief.

### B.    Summary Judgment

A motion for summary judgment will only be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Thus, the court "must perform a dual inquiry into the genuineness and materiality of any purported factual issues."  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  *Id*. at 364.  When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir. 1984) (citations omitted).

There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

Even viewing the facts in the light most favorable to Murphy, his claims of danger are unsupported by specific allegations of fact.  None of Murphy's verified records suggest he has suffered physical or emotional harm.  By his own account, Murphy wants to be housed by himself to avoid the potential of receiving infractions that might extend his incarceration.

Prisoners do not have a constitutional right to be housed in one prison versus another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano,* 427 U.S. 215, 224 (1976).  Inmates have no constitutional right to be housed in any particular prison or jail, regardless of security classification.  Further, inmates have no liberty interest in placement in a particular prison, and prison officials have broad discretion to classify inmates and assign them to appropriate prison housing.  *See* 18 U.S.C. § 3621(b); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Meachum*, 427 U.S. at 224).

Further, in order to state an Eighth Amendment violation for unconstitutional conditions of confinement, an inmate must allege that he has sustained a serious or significant mental or physical injury as a result of the conditions.  *See Strickler,* 989 F.2d at 1380–81.  As noted, Murphy provides no evidence of mental or physical injury.  Generally, a prisoner has no constitutional right to a single cell, and Murphy does not demonstrate that deprivation of a single cell constitutes deliberate indifference to a serious medical need or to an excessive risk to his safety.

To the extent that Murphy may intend to present an Eighth Amendment claim for failure to protect, he does not allege that defendant acted with deliberate or callous indifference to a specific known risk of harm.[3]  *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) *also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).  Murphy acknowledges that he did not alert corrections officers to specific concerns of harm.  Further, Murphy does not particularize any incident when he was in fact harmed or threatened.  Thus, Murphy presents no grounds to premise an Eighth Amendment claim for failure to protect.

After considering the facts and all reasonable inferences in the light most favorable to Murphy, the court finds that there is no genuine dispute as to any material fact and summary judgment will be granted in favor of defendant as a matter of law.

## CONCLUSION

For these reasons, the court will deny preliminary injunctive relief and grant summary judgment in favor of Defendant.  A separate order shall follow.

September 27, 2016                              _____/s/_____
Date                                                      DEBORAH K. CHASANOW
                                                            United States District Judge

---

[3]   Murphy does not claim that the Warden or any other correctional officer acted with deliberate indifference to his safety and welfare.  Further, Murphy does not allege that defendant was personally aware of his concerns.  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Murphy does not allege, nor does the record suggest, that the Warden is culpable based on the doctrine of supervisory liability.